UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-61323-CIV-MORENO**

DORIS VALDEZ,

                    Plaintiff,

vs.

COLONY SHINY STAFF, LLC, d/b/a THE
COLONY CLUB SUNRISE,

                    Defendant.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS</u>

      This is an employment case where the employee, Plaintiff Doris Valdez, filed suit against her former employer, the Colony Shiny Staff, LLC, an assisted living facility. The Colony now seeks to dismiss Counts II-III, VI, and VIII-IX of Valdez's First Amended Complaint (**D.E. 27**), contending that she has failed to sufficiently allege her hostile work environment under the Age Discrimination in Employment Act (Count II), her retaliatory claims under the Age Discrimination in Employment Act, Florida Civil Rights Act, and Title VII (Counts III, VI, VIII, respectively), and her claim under Florida's Whistle-blower's Act (Count IX). For the reasons that follow, the Court grants the Colony's motion to dismiss Counts II-III, VI, and VIII and denies the motion as to Count IX.

## I.      <u>BACKGROUND</u>

      The following allegations are taken from Valdez's First Amended Complaint. Valdez was hired on or about November 15, 2018 by the Colony as a housekeeper. Upon starting her employment with the Colony, the workload was not evenly distributed, as she received most of the responsibilities as it related to the care of the Colony's residents. According to Valdez, one of

her supervisors, Shirlene, would intentionally assign Valdez a heavier workload than her coworkers, such as assigning Valdez seven patients to bathe per day while her younger, non-Hispanic coworkers were assigned between two and three patients.

Valdez also claims that her coworkers discriminated against her. After a few days on the job, Latoya, a coworker, told Valdez that she was "too old to be in housekeeping" and constantly referred to her as "old lady." Latoya would also make comments to Valdez like "What's wrong with you old lady?" and "Get the f*ck out of my face old lady." On one specific occasion, in mid-March of 2019, Valdez was meeting with a supervisor, Ms. Donna Yum, in Ms. Yum's office. At that time, Latoya entered the office, saw Valdez, and stated, "What the f*ck is she doing here, kick this f*cking b*tch out of the office." Valdez then told Ms. Yum, "You see [], I am not lying to you, you see the way they treat me here?" and that "[t]his [was] how [Latoya and Alexia][1] treat [her] on the weekend[s]." Latoya then stated "f*ck you in [Ms. Yum's] presence."

Latoya was not the only coworker that engaged in this type of behavior. Valdez alleges that, at all times relevant to this action, Alexia would also harass her. On numerous occasions, Alexia would refer to Valdez as "that f*cking Spanish b*tch with the red hair." Valdez told Ms. Yum what Alexia was referring to her as and asked Ms. Yum to be placed on a shift where she would not have to work with Alexia because of the harassment that she was enduring.

In another incident involving Alexia, in late March of 2019, while Valdez was speaking to Lidia, another supervisor, Valdez claims that Alexia approached her and Lidia and told Valdez to go change one Gary, presumably a resident, while Gary was having lunch. Alexia then told Valdez "he needs to go to the f*cking bathroom, go take him and change him." Valdez then told Lidia that Alexia was "being disrespectful to [her]" and that Alexia always used the word "f*ck" when

---

[1] As discussed in more detail below, Alexia is another coworker that berated Valdez and, according to the First Amended Complaint, engaged in discriminatory conduct.

speaking to her," at which time Alexia told Valdez "Yes, you f*cking b*tch, f*ck you, suck my d*ck if I have one." When Valdez appealed to Lidia to take disciplinary action, Lidia allegedly stated "Why don't the two of you go outside and beat the sh*t out of each other."

According to Valdez, she complained of the discrimination by her coworkers and the Colony retaliated against her, including but not limited to, terminating her, and that these adverse employment actions were the result of her complaining about the alleged discrimination she suffered.

Moreover, Valdez also alleges that the Colony violated Florida's Whistle-blower's Act when the Colony terminated her for providing information relevant to the Agency for Health Care Administration's investigation regarding alleged safety violations by the Colony. As relevant to that claim, on March 6, 2019, Valdez went to bathe one Resident 1, who was roomed with another resident, Resident 2, who was known to be physically violent and aggressive and had previously physically attacked several residents and staff in the past, including Valdez. Once Valdez undressed Resident 1, she noticed that there were several distinct bruises and lacerations to Resident 1's body, including bruises on her shoulders, forehead, forearm, thighs, knees, legs, back and a laceration under her breast. Valdez then called one Anne to show her the bruises on Resident 1's body and to tell her it was "apparent that Resident 2 had beaten Resident 1," which she later communicated to "Luc," Lidia, and Ms. Yum—the management team at the Colony—on March 7, 2019. Valdez states that the management team then contacted her on multiple occasions in an attempt to get her to change her account of what she had observed, and to say that Resident 1 had fallen. Valdez then provided this information to the Agency for Health Care Administration and Ms. Alexandra Watson with the agency "initiated an investigation on this matter."

Following the initiation of the investigation, the Agency for Health Care Administration contacted the Colony and requested to speak with Valdez regarding her prior reports regarding Resident 1, at which time, Lidia told Valdez that the agency was going to call her and that they would "go over what [she] was going to say." Valdez alleges that she was not going to change her report regarding the extent or cause of the injuries, and "[t]he reports to [the Agency for Health Care Administration] infuriated [the Colony's] management team." As a result, the Colony then retaliated by terminating her less than 2 months later. Prior to her termination, Valdez complained to the owner, Luc, and her direct supervisor, Lidia, regarding the Colony's failure to comply with the Agency for Health Care Administration safety regulations.

Now, the Colony seeks to dismiss Valdez's claims for hostile work environment under the Age Discrimination in Employment Act (Count II), her retaliatory claims under the Age Discrimination in Employment Act (Count III), the Florida Civil Rights Act (Count VI), and Title VII (Count VIII), and her claim under Florida's Whistle-blower's Act (Count IX).

## II.    LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above

the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

## III.    DISCUSSION

The Colony seeks to dismiss Counts II-III, VI, and VIII-IX. For the reasons that follow, this Court grants the motion to dismiss the First Amended Complaint as it relates to Counts II-III, VI, and VIII, with leave to file an amended complaint that cures the deficiencies outlined herein, and denies the motion to dismiss Count IX.

### A.  Count II (Age Discrimination in Employment Act- Hostile Work Environment)

First, the Colony seeks to dismiss Count II of the Plaintiff's First Amended Complaint, which is a cause of action against Colony for hostile work environment under the Age Discrimination in Employment Act. Here, the parties agree that in order to establish a *prima facie* case of hostile work environment under the Age Discrimination in Employment Act, a plaintiff must satisfy the following elements: (1) the employee must prove she "belongs to a protected group"; (2) "[s]he has been subject to unwelcome harassment"; (3) "the harassment was based on a protected ground"; (4) "the harassment was severe or pervasive enough to alter the terms and conditions of h[er] employment"; (5) "and h[er] employer is responsible for the harassment under a theory of vicarious or direct liability." *See Litman v. Sec'y, of the Navy*, 703 Fed. Appx. 766, 771 (11th Cir. 2017) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).[2] Recently, in a Title VII context, the Eleventh Circuit characterized a hostile work environment

---

[2] In *Massey*, as none of the parties there questioned the proposition, the Eleventh Circuit assumed "the hostile environment doctrine developed in Title VII actions applies in an [Age Discrimination in Employment Act] action." *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 n.7 (11th Cir. 1997).

claim as "mistreatment based on race or other prohibited characteristics, including subjection to adverse conditions," and noted that such a claim "is actionable even if the mistreatment does not rise to the level of a tangible employment action, but only if the mistreatment is 'sufficiently severe or pervasive' that it can be said to alter the terms, conditions, or privileges of employment." *See Monaghan v. Worldpay, US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (citing *Miller*, 277 F.3d at 1275).

As to Count II, the Colony argues that Valdez has failed to sufficiently allege the fourth and fifth elements required for a hostile work environment claim under the Age Discrimination in Employment Act: the harassment was severe or pervasive enough to alter the terms and conditions of her employment and her employer is responsible for the harassment under a theory of vicarious or direct liability. Because Valdez has failed to sufficiently allege these elements of a *prima facie* hostile work environment claim under the Age Discrimination in Employment Act, Count II is dismissed without prejudice, with leave to refile an amended complaint, if appropriate, that cures the deficiencies outlined herein.

### 1. Severe or Pervasive Harassment

As to the fourth element, the Colony contends that Valdez has failed to establish the fourth element of her hostile work environment claim, as her First Amended Complaint only includes an "isolated contention" that an alleged supervisor gave her more residents to bathe than younger workers, and an isolated incident does not amount to "severe or pervasive" harassment. *See Uppal v. Hosp. Corp. of Am.*, 482 Fed. Appx. 394, 397 (11th Cir. 2012) (holding that "single incident of harassing conduct cannot support a hostile work environment claim") (citing *Miller*, 277 F.3d at 1276); *Satchel v. School Bd. of Hillsborough Cnty.*, 251 Fed. Appx. 626, 630 (11th Cir. 2007) (holding that plaintiff did not present evidence to show that harassment was severe and pervasive

where harassment "consisted of specific, isolated incidents which occurred over a period of years at different schools"). In her response, Valdez maintains that "the frequent degrading comments coupled with [the Colony's] employees['] hostile conduct cumulatively created a hostile work environment," such as Valdez being referred to as "old b*tch" and "Spanish b*tch" on "a regular basis."

The court in *Satchel* noted that the Eleventh Circuit has previously stated that the severe or pervasive harassment element "contains both a subjective and an objective component." *Satchel*, 251 Fed. Appx. at 630 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). "Thus, to satisfy this element, the employee must show that she subjectively perceived the harassment as severe and pervasive enough to change the terms or conditions of employment and present facts sufficient for the district court to find that this perception was objectively reasonable." *Id.* (citing *Mendoza*, 195 F.3d at 1246). When making this determination, district courts should consider the following factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citing *Mendoza*, 195 F.3d at 1246); *see also Miller*, 277 F.3d at 1276 (noting the factors considered for "evaluating the objective severity of the harassment," also known as the *Allen* test) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). The Colony did not address the *Allen* test in its motion to dismiss.

To the extent that the Colony argues that Valdez has only shown one isolated incident involving harassment, the Court disagrees. As alleged in the First Amended Complaint, Shirlene would assign Valdez a heavier workload than her coworkers. Specifically, Valdez alleges "[b]y way of example, Valdez was assigned to bathe approximately seven (7) patients per day while her

young, non-Hispanic coworkers were assigned to bathe between two (2) and three (3) patients." (D.E. 12 ¶ 23). While Valdez did not allege other examples, or the frequency of this disproportionate assignment, she did allege other incidents involving harassment based on her age, namely, comments directed at her by her coworker, Latoya.

For example, Valdez alleges that Latoya told her she was "too old to be in housekeeping" and "constantly refer[red] to Valdez as 'old lady.'" According to Valdez, Latoya would tell her "What's wrong with you old lady?" and "Get the f*ck out of my face old lady." Similar to Shirlene's disproportionate work assignment, the First Amended Complaint does not specify the frequency of Latoya's comments to Valdez.

The Court also notes that some of the incidents alleged were not based on Valdez's age. For example, approximately four months after she was hired as housekeeper, in mid-March of 2019, Valdez was meeting with her supervisor, Ms. Yum, in Ms. Yum's office. During their meeting regarding work-related matters, Latoya and another supervisor, Lidia, entered Ms. Yum's office. At this time, Latoya made several offensive utterances, which were directed at Valdez. Notwithstanding the foul language directed at Valdez, as alleged, this incident does not implicate any discrimination based on Valdez's age.

Notwithstanding that Valdez has alleged more than one incident involving harassment based on her age, the Court notes that neither party addressed the *Allen* test—the 4-part analysis for determining whether a plaintiff has shown that her perception of severe or pervasive harassment was enough to change the terms or conditions of her employment, and whether her perception was "objectively reasonable." *Satchel*, 251 Fed. Appx. at 630; *Miller*, 277 F.3d at 1276 (citing *Allen*, 121 F.3d at 647).

Based on a review of the allegations as they pertain to Count II, the First Amended Complaint does not include any factual allegations concerning how the harassment altered the terms and conditions of her employment, that is, facts showing how Valdez subjectively perceived the harassment as "severe and pervasive enough to change the terms or conditions of employment" and "facts sufficient for the district court to find that this perception was objectively reasonable." *Satchel*, 251 Fed. Appx. at 630 (citing *Mendoza*, 195 F.3d at 1246). Valdez only alleges, in conclusory fashion, that "[t]he conduct was so severe and pervasive that a reasonable person in Plaintiff['s] position would find Plaintiff['s] work environment to be hostile and abusive." (D.E. 12 ¶ 74).

Also, Valdez does not allege how Latoya's age-related insults altered the terms and condition of her employment or whether such insults "unreasonably interfere[d] with [her] job performance." *See id.* As noted, the First Amended Complaint does not specify the frequency of Latoya's age-related insults to Valdez. While Shirlene assigning Valdez a larger workload relative to her younger coworkers appears to satisfy this requirement—Valdez only provided one example like this in her First Amended Complaint.

Accordingly, Count II of the First Amended Complaint is dismissed without prejudice, with leave to refile an amended complaint if appropriate. Any amended complaint should allege the frequency and extent of any and all age-related harassment, whether Valdez subjectively perceived the harassment as severe and pervasive enough to change the terms or conditions of her employment, and facts showing that her perception was objectively reasonable. *Satchel*, 251 Fed. Appx. at 630 (citing *Mendoza*, 195 F.3d at 1246). These allegations, pertaining to Valdez's hostile work environment claim under the Age Discrimination in Employment Act, shall be included under Count II of any amended complaint.

## 2. Responsibility of the Employer

The Colony maintains that Count II must also fail because Valdez as failed to satisfy the fifth element, that is, that her employer is responsible for the harassment under a theory of vicarious or direct liability. *See Litman*, 703 Fed. Appx. at 771 (citing *Miller*, 277 F.3d at 1275). According to the Colony, Valdez has failed to allege any facts showing that it knew, or should have known, of any age-related harassment of Valdez. *See Cobb v. City of Roswell, Ga. Ex rel. Wood*, 533 Fed. Appx. 888, 897 (11th Cir. 2013) (holding that plaintiff failed to make out a *prima facie* case for a hostile work environment claim where "he did not complain to any officials [] of the alleged ageist language that younger officers used and, thus, did not show a basis for [the defendant's] liability") (citing *Miller*, 277 F.3d at 1278-79).

"An employer 'is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Miller*, 277 F.3d at 1278 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). "The employer will be strictly liable for the hostile work environment if the supervisor takes tangible employment action against the victim." *Id.*

"Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller*, 277 F.3d at 1278 (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)). "Thus, a victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." *See id.*

In its motion to dismiss, the Colony argues that Valdez has failed to allege that the Colony knew, or should have known, about the harassment. In her response, Valdez merely states that her

"internal complaints to [] Lidia and Yum were ignored by the [Colony]" and that she "explained that [] [the Colony] assigned her a much heavier case load than that of the younger, [] employees and [] [the Colony's] supervisor encouraged [the Colony's] employees to engage in a physical altercation to resolve their work place conflict."

Based on a review of the allegations of Count II, Valdez has failed to sufficiently allege that she complained of the ageist-related harassment to her supervisors. As alleged, the incidents that occurred in front of supervisors involving coworkers, namely, Latoya and Alexia, did not involve any age-related harassment. (D.E. 12 ¶¶ 28-29, 31-33). To the extent that Valdez relies on a supervisor's comment that her and Alexia, a coworker, should go outside and fight, such a comment appears to have no relation to Valdez's age. As it relates to Shirlene, a supervisor, assigning Valdez more work based on her age, Valdez does not respond to the Colony's argument that this single incident is insufficient to show that the Colony is responsible. As previously noted, the First Amended Complaint does not allege the frequency of this disproportionate assignment. As alleged, it appears this is only one example of Shirlene assigning Valdez a "heavier workload" (D.E. 12 ¶ 23).

Accordingly, a dismissal of Count II without prejudice is also appropriate on these grounds. Any amended complaint shall include specific, concrete allegations under Count II's hostile work environment claim under the Age Discrimination in Employment Act, and such allegations must show how the Colony is responsible for the harassment under a theory of vicarious or direct liability. Specifically, under this count, Valdez should allege facts showing how the Colony knew, or should have known, about the age-related harassment based on any co-employee harassment. *Miller*, 277 F.3d at 1278. Valdez should also allege facts showing how Shirlene's actions are sufficient to show that the Colony is vicariously liable based on Shirlene's actions.

**B. Retaliation Claims: Count III (Age Discrimination in Employment Act), Count VI (Florida Civil Rights Act), and Count VIII (Title VII)**

As to Valdez's retaliation claims under the Age Discrimination in Employment Act (Count III), Florida Civil Rights Act (Count VI), and Title VII (Count VIII), the Colony contends that Valdez has failed to sufficiently allege that she engaged in protected expression and a causal connection between the protected conduct and the adverse employment action.

**1. Count III (Age Discrimination in Employment Act- Retaliation)**

As to Count III, a retaliation claim under the Age Discrimination in Employment Act, the Colony argues that "nowhere in her Complaint does [Valdez] contend that she opposed or complained to anyone, let alone a decision maker, about anything age-related." The Colony also claims that Valdez has failed to sufficiently allege a causal connection between her "one alleged complaint and an adverse employment action."

The Eleventh Circuit has previously stated that, in order to state a claim for retaliation under Title VII, "[a] plaintiff must allege that (1) [s]he engaged in protected activity; (2) after doing so, [s]he was subjected to unwelcome harassment; (3) the protected activity was the but-for cause of the harassment; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create an abusive work environment." *Palmer v. McDonald*, 624 Fed. Appx. 699, 704 (11th Cir. 2015) (citing *Gowski v. Peake*, 682 F.3d 1299, 1311-13 (11th Cir. 2012)).[3]

However, recently, in April 2020, and in a Title VII context, the Eleventh Circuit held that the retaliatory standard stated in *Gowski* was inconsistent with prior Supreme Court and Eleventh

---

[3] The Colony posits, and Valdez does not disagree, that decisions construing Title VII are applicable to Age Discrimination in Employment Act retaliation claims. The Colony cites the Eleventh Circuit's unpublished decision in *Palmer*, which cites the Eleventh Circuit's decision in *Gowski* for the requisite elements that a plaintiff must show to establish a retaliatory cause of action under the Age Discrimination in Employment Act. (D.E. 20, at 8-9).

Circuit precedent. *Monaghan*, 955 F.3d at 862. As a preliminary matter, the Eleventh Circuit summarized a retaliation case as follows: "mistreatment based on retaliation for protected conduct—for example, making or supporting a charge of discrimination—is actionable whether or not the mistreatment rises to the level of a tangible employment action, but only if the mistreatment 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 861 (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, (2006)). In that case, the Eleventh Circuit stated that "the retaliation standard in *Gowski* [was] inconsistent with *Burlington Northern* and *Crawford*"[4] and "reaffirm[ed] that the standard applicable to all Title VII claims is the *Burlington Northern* 'well might have been dissuaded' standard." *Id.* at 862 (reasoning that "adherence to the prior-panel rule is strict, but where there are conflicting prior decisions, the oldest one controls") (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000)).

Accordingly, as the parties do not disagree that decisions construing Title VII apply to Age Discrimination in Employment Act claims, in order to allege a *prima facie* case of retaliation under the Age Discrimination in Employment Act, a plaintiff must show that: "(1) she engaged in an activity protected under [the Age Discrimination in Employment Act]; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). In its motion to dismiss, the Colony claims that Valdez failed to meet the protected expression and causation elements.

---

[4] *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008).

>  i.     *Protected Activity under the Age Discrimination in Employment Act*

The Colony first claims that Valdez has failed to sufficiently allege that she engaged in protected expression under the Age Discrimination in Employment Act because the First Amended Complaint does not allege that "she suffered an adverse action for making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." The Age Discrimination in Employment Act provides, in relevant part:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants. . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). "To establish that she engaged in [Age Discrimination in Employment Act] protected expression, [the plaintiff] must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *See Stone v. Geico Gen. Ins. Co.*, 279 Fed. Appx. 821, 823 (11th Cir. 2008) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)).

In her response to the motion to dismiss, Valdez claims that "[the Colony] and its leadership team was on notice of the discriminatory and hostile conduct" and that she "discussed the conduct with Lidia and as a result nothing was done to remedy the situation." In support of this proposition, Valdez states that she "complained to [] Lidia and [Ms.] Yum that she was called an 'old b\*tch' and 'Spanish b\*tch'[5] on numerous occasions." Based on a review of the allegations as they relate to Count III (D.E. 12 ¶¶ 1-58, 77-87), such an allegation is not included in the First Amended Complaint. Thus, it is unclear what protected activity Valdez engaged in as a result of her age or how she opposed any age-related harassment.

---

[5] Valdez references this comment in her response and the First Amended Complaint, but this insult does not implicate Valdez's age.

Accordingly, Count III of the First Amended Complaint is dismissed without prejudice, with leave to refile an amended complaint if appropriate. Any amended complaint shall include factual allegations that show how she engaged in protected expression under the Age Discrimination in Employment Act. *See Crawford*, 529 F.3d at 970. These specific allegations related to the retaliation claim under the Age Discrimination in Employment Act should be included under Count III.

### ii. *Causal Connection Between the Protected Activity and the Adverse Employment Action under the Age Discrimination in Employment Act*

As previously noted, a plaintiff must show that "there was a causal connection between the protected activity and the adverse employment action." *See Crawford,* 529 F.3d at 970. Here, the Colony argues that Valdez has failed to sufficiently allege any causal connection between any protected activity and the adverse employment action. More specifically, the Colony contends that, even if Valdez's complaint to Ms. Yum in March 2019 was protected expression, Valdez has still failed to show how this complaint was causally connected with her being assigned more residents to bathe by Shirlene. Thus, based on a review of the First Amended Complaint, even assuming Valdez has sufficiently alleged that she engaged in protected expression (which she has not), Valdez has failed to allege a causal connection between any protected expression under the Age Discrimination in Employment Act and any adverse employment action based on said expression.

Accordingly, a dismissal of Count III without prejudice is also appropriate on these grounds. If appropriate, any amended complaint shall include factual allegations that show how Valdez engaged in protected expression under the Age Discrimination in Employment Act and how any adverse employment action is causally connected to said protected expression. *See Crawford*, 529 F.3d at 970. These specific allegations related to Valdez's retaliation claim under the Age Discrimination in Employment Act should be included under Count III.

### 2.  Count VI (Florida Civil Rights Act- Retaliation)

The Colony also seeks to dismiss Count VI, which is a retaliation cause of action under the Florida Civil Rights Act, arguing that Valdez has failed to sufficiently allege that she engaged in protected expression and a causal connection between said expression and the adverse employment action. The Florida Civil Rights Act prohibits "[u]nlawful employment practices," and provides, in relevant part:

> (1) It is an unlawful employment practice for an employer:
>
> > (a) To discharge or to fail to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

§ 760.10(1)(a), Fla. Stat. Moreover, § 760.10(7) provides as follows:

> (7) It is an unlawful employment practice for an employer…to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

§ 760.10(7), Fla. Stat. As such, "[t]o establish a prima facie case of retaliation under the [Florida Civil Rights Act], the plaintiff must show that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action." *Giles v. Daytona State Coll., Inc.*, 542 Fed. Appx. 869, 873 (11th Cir. 2013) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)). "[C]laims under the [Florida Civil Rights Act] are evaluated under the same analytical framework as Title VII claims." *Tebo v. City of DeBary, Fla.*, 784 Fed. Appx. 727, 729 n.3 (11th Cir.  2019) (citing *St. Louis v. Fla. Int'l Univ.*, 60 So. 3d 455, 458 (Fla. 3d DCA 2011)).

### i. *Statutorily Protected Activity under the Florida Civil Rights Act*

Based on a review of Count VI in the First Amended Complaint, Valdez is alleging a retaliation claim under the Florida Civil Rights Act based on her age and national origin. (D.E. 12 ¶ 125). According to the Colony, Valdez has failed to sufficiently allege that she engaged in statutorily protected expression. The Colony contends that Valdez only alleges, in conclusory fashion, that she complained to Lidia and Ms. Yum of "the discriminatory acts and comments from [the Colony's] employees" (D.E. 12 ¶ 109), and the only factual allegation involving a complaint was an isolated one, namely, when Valdez told Ms. Yum that Alexia was referring to her as "the f*cking Spanish b*tch with the red hair" (*id.* ¶ 33) and such an isolated incident is not actionable. *See Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (noting, in a Title VII context, "not every act by an employee in opposition to racial discrimination is protected" and "[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual") (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)).

In her response, Valdez does not address *Little* or how the only factual incident alleged, which only involved a complaint of national origin discrimination based on a co-employee's comment, is sufficient to show that she engaged in statutorily protected expression as it relates to her retaliation claim under the Florida Civil Rights Act, based on her age and national origin. As alleged in her First Amended Complaint, "[Valdez's opposition to the [national origin] remark by [Alexia], a co-worker, is protected conduct within the parameters of the [Florida Civil Rights Act] only if [Alexia's] conduct can be attributed to [the Colony]." *See Little*, 103 F.3d at 959. As such, like in *Little*, "[Alexia's] [] offensive comment alone is not attributable to [the Colony] and,

accordingly, [as alleged] [Valdez's] opposition to the remark did not constitute opposition to an unlawful employment practice." *Id.* at 959-960.

Accordingly, Count VI of the First Amended Complaint is dismissed without prejudice, with leave to refile an amended complaint if appropriate. Any amended complaint shall include factual allegations that show how Valdez engaged in protected expression under the Florida Civil Rights Act.

### ii.    *Causal Connection Between the Protected Activity and the Adverse Employment Action under the Florida Civil Rights Act*

"A plaintiff satisfies the third element [a causal connection between the protected activity and the adverse action] if she demonstrates that decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Giles*, 542 Fed. Appx. at 873-874 (internal citations omitted).

Here, the Colony argues that Valdez has failed to sufficiently allege a causal connection between the protected activity and the adverse employment action. The Court agrees. Assuming the one factual allegation regarding national origin is sufficient, namely, where Valdez complained to Ms. Yum that Alexia referred to her as "the f*cking Spanish b*tch with the red hair" (D.E. 12 ¶ 33), Valdez has failed to show a causal connection between her protected activity and any adverse employment action. As noted by the Colony in its motion to dismiss, Valdez has failed to allege that Ms. Yum was the decision-maker as to the adverse employment actions purportedly taken against Valdez or that the decision-makers, e.g., Shirlene assigning Valdez more residents to bathe, was aware of her allegedly protected conduct. Valdez has also failed to show that "the protected activity and the adverse action were not wholly unrelated." *See Giles*, 542 Fed. Appx. at 873-874 (internal citations omitted).

In her response in opposition, Valdez claims that "in March 2019, the discriminatory comments were relayed to Ms. Valdez in the presence of Ms. Valdez's supervisor, Lidia" and claims that the causation has been shown based on the "close temporal proximity between the statutorily protected activity and adverse-employment action." The Court need not reach the issue of temporal proximity because the March 2019 comments, made by Alexia to Valdez in the presence of Lidia, were not discriminatory in nature, that is, related to Valdez's national origin or age. (D.E. 12 ¶ 31). On that occasion, in the presence of Lidia, Valdez complained to Lidia about Alexia "being disrespectful" and "always using the word f*ck when she speaks to me," to which Alexia responded, "Yes, you f*cking b*tch, f*ck you, suck my d*ck if I have one." *Id.* Hence, Valdez has not alleged that she engaged in any statutorily protected activity or a causal connection between any alleged protected activity and an adverse employment for her retaliatory claim under the Florida Civil Rights Act.

Accordingly, a dismissal of Count VI without prejudice is also appropriate on these grounds. If appropriate, any amended complaint shall include factual allegations that show that "decision-makers [responsible for the adverse employment action] were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Giles*, 542 Fed. Appx. at 873-874.

### 3. Count VIII (Title VII- Retaliation)

Title VII's retaliatory provision provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). As relevant here, Title VII forbids discrimination against any individual by an employer based on the individual's national origin. As previously discussed, under Title VII, in order to allege a *prima facie* case of retaliation, a plaintiff must show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *See Crawford*, 529 F.3d at 970.

As to Count VIII, the Colony argues that Valdez also failed to sufficiently allege a Title VII retaliatory action as she failed to include factual allegations that show she engaged in protected activity and that there was a causal connection between the protected activity and the adverse employment action. The Court agrees. Like the allegations of Count VI, the allegations included under Count VIII are conclusory in nature as they relate to Valdez's protected activity (D.E. 12 ¶¶ 143-146) and whether there was a causal connection between the protected activity and the adverse employment action (*id.* ¶¶ 146-149).

Accordingly, Count VIII of the First Amended Complaint is dismissed without prejudice, with leave to refile an amended complaint if appropriate. Any amended complaint shall include factual allegations that show how she engaged in protected expression under Title VII and how any adverse employment action is causally connected to said protected expression. *See Crawford*, 529 F.3d at 970.

### C. <u>Florida Whistle-blower's Act (Count IX)</u>

Lastly, the Colony moves to dismiss Count IX, a claim under Florida's Whistle-blower's Act, as Valdez has failed to sufficiently allege protected expression or causation. Florida's Whistle-blower's Act provides as follows:

> An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate government agency, under oath, in writing, an activity, policy, or practice of an employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate government agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of law, rule, or regulation.

§ 448.102, Fla. Stat. "A retaliation claim under the [Florida Whistle-blower Act] is guided by the same analysis as a Title VII federal claim." *Berber v. Wells Fargo, NA*, 798 Fed. Appx. 476, 478 (11th Cir. 2020) (citing *Sierminski v. Transouth Fin. Corp.*, 215 F.3d 945, 950 (11th Cir. 2000)). Thus, "a plaintiff claiming retaliation under the [Florida Whistle-blower Act] must establish a *prima facie* case by demonstrating: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) the two are causally related." *Berber*, 798 Fed. Appx. at 478-479 (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).

In support of the proposition that Count IX should be dismissed for failure to allege the violation of a law, rule, or regulation, the Colony cites to two cases. *See Pinto v. Microsoft Corp.*, No. 12-60509-CIV, 2012 WL 4479059, at *3 (S.D. Fla. Sept. 28, 2012) ("In order to state a [Florida Whistle-blower's Act] claim, the [p]laintiff must refer to specific laws, rules or regulations which [d]efendant violated.") (citing *El Toro Exterminator of Fla. v. Cermada*, 953 So. 2d 616, 618 (Fla. 3d DCA 2007)); *see also Wolf v. Pac. Nat. Bank*, No. 09-21531, 2010 WL 5888778, at *5 (S.D. Fla. Dec. 28, 2010) ("The Florida [Whistle-blower] Act specifically defines '[l]aw, rule, or regulation' as 'any statute or ordinance or any rule or regulation adopted pursuant to any federal,

state, or local statute or ordinance applicable to the employer and pertaining to the business.'")
(citing § 448.101(4), Fla. Stat.).

Based on a review of the First Amended Complaint, Valdez does not cite to a specific law, rule, or regulation that was violated by the Colony. Moreover, in her response, Valdez does not state that a specific law, rule, or regulation was violated by the Colony. Rather, she cites to the Florida's Fourth District Court of Appeal's decision in *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (holding that the law, rule, or regulation violation standard is satisfied if the employee shows she had a "good faith, objectively reasonable belief that h[er] activity [was] protected by the statute") (citing *Luna v. Walgreen Co.*, 575 F.Supp.2d 1326, 1343 (S.D. Fla. 2008)); *see also Hernandez v. Publix Supermarkets, Inc.*, 11 F.Supp.3d 1177, 1182-83 (S.D. Fla. 2014) (same).

In a footnote in its reply, the Colony characterizes the "reasonable belief" versus "actual violation" standard as a "red herring" and that, in any event, "the Eleventh Circuit and this district have applied the 'actual violation' standard." *See Smith v. Psychiatric Sol., Inc.*, 358 Fed. Appx. 76, 78 (11th Cir. 2009) (holding that the district court correctly applied the actual violation standard regarding the plaintiff's "state law retaliation claim"); *Steenback v. Fed. Express Corp.*, No. 12-61515-CIV, 2013 WL 12085475, at *5 (S.D. Fla. Aug. 21, 2013) (finding that the plaintiff had sufficiently alleged an actual violation). Notably, the *Smith* decision predates the Fourth District Court of Appeal's decision in *Aery* and the Colony does not explain why this Court, which is sitting in diversity and applying Florida law, should not follow the Fourth District Court of Appeal's decision in *Aery*, where the court held that the plaintiff observed "acts, which if true, appear to be illegal, and which [the plaintiff] could have reasonably believed were illegal" and that

"[i]t was not necessary that [the plaintiff] provide his employer with statutory and case law citations to support his claim of illegal conduct." *Aery*, 118 So. 3d at 916.

Here, Valdez has sufficiently alleged her claim under Florida's Whistle-blower's Act: Valdez alleges that while caring for "Resident 1," she noted several injuries on the resident and concluded that another resident, Resident 2, who was known to be physically violent and aggressive and roomed with Resident 1, inflicted the injuries. She later communicated what she observed to Luc, Lidia, and Ms. Yum, the management team at the Colony. As a result, Valdez alleges that the management team then contacted her on "multiple occasions" in an "attempt[] to get her to change her account of what she had observed, and to say that Resident 1 had fallen." (D.E. 12 ¶ 37). Valdez then contacted the Agency for Health Care Administration and spoke with Ms. Watson with the agency, who then "initiated an investigation on this matter." *Id.* ¶ 38.

Following the initiation of the investigation, the Agency for Health Care Administration contacted the Colony and requested to speak with Valdez regarding her prior reports regarding Resident 1, at which time, Lidia told Valdez that the agency was going to call her and that they would "go over what [she] was going to say." *Id.* ¶ 41. Valdez alleges that she was not going to change her report, regarding the extent or cause of the injuries, and "[t]he reports to [the Agency for Health Care Administration] infuriated [the Colony's] management team." *Id.* Prior to her termination, she complained to the owner of the Colony, Luc, and her supervisor, Lidia, regarding the alleged safety regulation violations.  *Id.* ¶ 157.

Like in *Aery*, where the court held that the plaintiff sufficiently alleged a *prima facie* case where, in the light most favorable to the non-moving party, the evidence showed that the defendant committed acts that, if true, appeared to be illegal, here, Valdez has sufficiently alleged that she had a "good faith, objectively reasonable belief" that her activity was protected by Florida's

Whistle-blower's Act, as she provided information to the Agency for Health Care Administration regarding the Colony's alleged failure to comply with safety regulations. *Aery*, 118 So. 3d at 916. Accordingly, Valdez has sufficiently alleged she engaged in statutorily protected activity under Florida's Whistle-blower's Act.

To the extent that the Colony argues that Valdez has failed to sufficiently allege a causal relationship between her expression and the adverse employment action, the Court disagrees. In its reply, the Colony claims that Valdez has "failed to properly allege that she engaged in protected expression, she cannot show that decision makers as to any adverse actions were aware that she engaged in such expression." Such a contention is without merit. As previously noted, Valdez has alleged that she complained of the Colony's failure to comply with safety regulations to her direct supervisor, Lidia, and the owner, Luc.  (D.E. 12 ¶ 157). Weeks later, Luc told Valdez she was fired and, on the same day, she also received a call from Lidia advising she was terminated. *Id.* ¶ 47.

Accordingly, as the Colony did not address *Aery* in its reply, and why it is inapplicable here, the Court finds that Valdez has sufficiently alleged a reasonable, good faith belief that she was engaged in statutory protected expression and there was a causal connection between her expression and her termination, which occurred less than 2 months after she "blew the whistle," so to speak, regarding the Colony's alleged safety violations and provided information to the Agency for Health Care Administration.[6] Thus, the Colony's motion to dismiss Count IX is denied.

---

[6] The Court also notes, under a Title VII context, the Eleventh Circuit has stated the opposition clause can be satisfied for a retaliatory claim if the plaintiff "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *See Little*, 103 F.3d at 960 (citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989)).

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons, the Colony's motion to dismiss **(D.E. 20)** is granted as to Counts II-III, VI, and VIII and denied as to Count IX.

Counts II-III, VI, and VIII of Valdez's First Amended Complaint are dismissed without prejudice, with leave to refile the counts via an amended complaint if appropriate. Failure to cure the deficiencies outlined herein as it relates to these counts shall result in a dismissal with prejudice. Valdez shall file any amended complaint by **February 8, 2021.**

DONE AND ORDERED in Chambers at Miami, Florida, this 25th of January 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Counsel of Record